UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

MICHAEL G. DOWD,

Plaintiff,

v.

J. P. MORGAN CHASE BANK, N.A.,

Defendant.

-----------------------------------------------------------------X

**COMPLAINT**

Civil Action No.:

**JURY TRIAL DEMANDED**

Plaintiff Michael G. Dowd ("Plaintiff"), appearing on his own behalf, brings this Amended Complaint against Defendant J. P. Morgan Chase Bank, N.A. ("Chase"), and alleges as follows:

## NATURE OF THE ACTION

1. This action concerns unauthorized transactions involving Plaintiff's personal checking and savings accounts, law-office operating account, and attorney trust account at Chase, and Chase's handling of Plaintiff's disputes. Plaintiff seeks relief under the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, and Regulation E; Article 4-A of New York's Uniform Commercial Code ("U.C.C."); New York common law (negligence and breach of contract); and N.Y. Gen. Bus. Law § 349. The EFTA claim concerns only the personal accounts. The commercial-account funds-transfer claims are pleaded under U.C.C. Article 4-A, which does not apply to a funds transfer any part of which is governed by the EFTA. N.Y. U.C.C. § 4-A-108. The common-law claims are pleaded in the alternative, only to the extent consistent with the governing statutory remedies.

## JURISDICTION

2. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises in part under the EFTA, 15 U.S.C. § 1693 *et seq.*

3. Plaintiff seeks civil relief under 15 U.S.C. § 1693m for violations of the EFTA's unauthorized-transfer and error-resolution requirements.

4. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's New York U.C.C. Article 4-A, negligence, breach-of-contract, and N.Y. Gen. Bus. Law § 349 claims because they form part of the same case or controversy as the federal claim.

5. All of the claims concern Plaintiff's banking relationship with Chase, disputed account activity, Chase's response to reported unauthorized transactions, and August 2026 transfers that moved funds from Plaintiff's personal accounts into his commercial accounts. The claims involve overlapping account records, communications, and questions concerning access to and protection of those accounts.

## VENUE

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Plaintiff resides in Queens County, New York, and Chase transacts business in this District.

## PARTIES

7. Plaintiff Michael G. Dowd resides in Queens County, New York. He is an attorney admitted to practice in New York State and in the United States District Courts for the Eastern, Southern and Western Districts of New York.

8. Defendant J. P. Morgan Chase Bank, N.A. is a national bank that transacts business in the Eastern District of New York and maintained the deposit accounts at issue.

## FACTUAL ALLEGATIONS

### A. Plaintiff maintained separate personal and commercial accounts at Chase.

9. Plaintiff maintained a banking relationship with Chase for more than 30 years. This action concerns four accounts: (a) a personal checking account ending in 1027 ("Account 1027"); (b) a personal savings account ending in 9630 ("Account 9630"), which appears on the same statement as Account 1027; (c) a law-office operating checking account ending in 8700 ("Account 8700"); and (d) an IOLTA attorney trust account ending in 6930 ("Account 6930").

10. Account 1027 was a demand-deposit asset account established primarily for personal, family, or household purposes. Account 9630 was a savings-deposit asset account established primarily for personal, family, or household purposes. Plaintiff held both accounts at Chase. The personal-account statements identify the accounts as Chase Premier Plus Checking and Chase Premier Savings. They reflect Social Security deposits into the checking account and payments for a home mortgage, health insurance, and utilities. The savings account was linked to the checking account for overdraft protection. (Account 1027 Statements, June 4 through July 3, 2026, at 1-3; July 4 through August 5, 2026, at 1-3.)

11. Plaintiff is 84 years old and receives Social Security benefits.

12. The account ending in 8700 was Plaintiff's law-office operating account. The account ending in 6930 was his attorney-trust account. Chase's statements identify Plaintiff as doing business as the Law Office of Michael G. Dowd and identify account 6930 as an attorney-trust account. Accounts 8700 and 6930 are the commercial accounts addressed by the U.C.C. Article 4-A claim, not the EFTA claim. (Account 8700 Statements, June 2026, at 1; Account 6930 Statements, June 2026, at 1.)

13. The monthly statements are attached as exhibits: the personal checking and savings statements covering June 4 through September 3, 2026, which show both Account 1027

and Account 9630 ("Account 1027 Statements"), Exhibit "A"; the office-account statements covering May 30 through August 31, 2026 ("Account 8700 Statements"), Exhibit "B"; and the trust-account statements covering May 30 through August 31, 2026 ("Account 6930 Statements"), Exhibit "C".

14. Over the years, Chase occasionally contacted Plaintiff about questionable transactions. Chase also assured Plaintiff that his platinum checking relationship included a personal banker who was Ms. Jung Yoon Jee. Those assurances led Plaintiff to believe Chase's employees were providing account oversight and protection.

**B. Plaintiff discovered and reported unauthorized office-account transactions.**

15. On June 13, 2026, Plaintiff suffered an accident that seriously injured his left sacroiliac joint. The injury prevented him from sitting or lying flat and limited his ability to review his accounts.

16. On June 25, 2026, Plaintiff underwent a cortisone injection procedure at St. Francis Hospital in Port Washington, New York. Afterward, he could sit only for short periods.

17. On June 28, 2026, Plaintiff discovered what he estimated to be approximately 69 unauthorized ticket-purchase transactions in account 8700 between June 15 and June 22, 2026, totaling approximately $17,434.60. The June statement records numerous Ticketmaster and related ticket charges as debit-card purchases. (Account 8700 Statements, June 2026, at 4-6.) Plaintiff's debit card was never lost or stolen. Account 8700 had never been used to buy more than one ticket at a time.

18. Plaintiff did not authorize, approve, or consent to the disputed ticket purchases. He reported the transactions to Chase and requested that Chase restore the funds.

19. On June 29, 2026, after Plaintiff's report, Chase credited Account 8700 for all of the disputed ticket charges made between June 15 and June 22, 2026, except four: a $234.00 charge on June 15, 2026; charges of $221.40 and $346.80 on June 17, 2026; and a $3,631.08 charge on June 22, 2026. Those four charges total $4,433.28. The June statement records the credits on June 29, 2026, and reports total credits of $15,034.39. (Account 8700 Statements, June 2026, at 1-4, 6.) Chase has refused to explain why it withheld credit for the four charges.

20. Between June 28 and July 22, 2026, Plaintiff had approximately 60 telephone communications and contacts with Chase concerning the unauthorized activity. Plaintiff's call log, identifying the dates and lengths of the calls, is designated Exhibit "D". Plaintiff made many more calls after July 22, 2026. Throughout, Chase's employees refused to provide any identifying information beyond their first names.

21. Beginning on June 28, 2026, Plaintiff was repeatedly assured that changing the ID and password would keep funds safe and that Chase was exercising care in protecting these accounts.

22. Chase routed Plaintiff's calls to call centers in India, the Philippines, Mexico, and the United States. Plaintiff repeatedly had to address the dispute with representatives who were unfamiliar with what earlier representatives had told him. Representatives repeatedly declined to identify themselves beyond a first name or explain the basis for Chase's actions. They provided no information about what they were doing about the thefts.

23. At Chase's request, Plaintiff changed his user ID and password at least six times between June 28 and August, 2026. Chase also asked him to have an information-technology expert examine and clean his computer and to use an IBM protection program. This was done.

24. On July 20, 2026, Chase debited Plaintiff's account for numerous previously credited Ticketmaster transactions. Plaintiff repeatedly requested an explanation, but did not receive one. The July statement records reversal debit entries totaling $13,001.32 associated with the earlier June 29, 2026 credits. (Account 8700 Statements, July, 2026, at 2-5.) Chase repeatedly refused to explain the justification for the July re-debits and refused to re-credit Account 8700.

25. Plaintiff also discovered an unauthorized $5,000.00 Zelle payment from account 8700 to a person unknown to him. The statement identifies the recipient as "Dzarakhmat Tsgoev" and gives transaction reference Jpm99Cne3J3R. (Account 8700 Statements, June 2026, at 6.) Plaintiff did not authorize or approve that Zelle payment. Chase refused to credit the $5,000.00 to his office account and did not explain its refusal.

26. Chase paid two unauthorized payroll transactions from account 8700: $3,550.25 on July 7, 2026, identified as an online payroll payment, reference 11226937304, to an account ending in 5717; and $3,155.25 on July 8, 2026, identified as a same-day ACH payroll payment, reference 11226991790, to an account ending in 8897. (Account 8700 Statements, July 2026, at 5.) Plaintiff had no payroll after 2016, and Chase should have known. Plaintiff did not authorize these payroll payments and demanded that Chase restore both amounts.

27. The July statement for Account 8700 records returns of six payroll payments on July 28 and July 29, 2026, and credits of $4,875.00 posted on those dates. (Account 8700 Statements, July 2026, at 1, 5.)

28. Plaintiff had his computer scanned for viruses, and none were found. Plaintiff therefore alleges that the breach resulted from Chase's failure to protect his accounts.

**C. After Chase flagged suspicious activity, unauthorized August transfers drained both commercial accounts and moved funds out of the personal accounts.**

29. Plaintiff's personal banker, Jung Yoon Jee, called Plaintiff on August 14, 2026, to report suspicious activity in Plaintiff's IOLTA account and notified Plaintiff of attempted thefts from his accounts. That day, Plaintiff reported to Chase that fraudulent transactions were observed in Account 6930, in the August commercial-account payments, and in the disputed personal-account transfers. Plaintiff immediately requested that Chase do everything in its power to prevent what appeared to be "pending" charges from becoming final. Plaintiff's numerous earlier calls (paragraph 20) had already put Chase on notice that his accounts were subject to theft and on heightened alert for further unauthorized transactions.

30. Despite that notice, On August 17, 2026, Chase posted eight unauthorized online real-time vendor payments to account 8700: $3,422.54 and $477.30 to Duvall Inc; $988.50, $498.21, $1,377.62, $1,199.88, and $1,101.20 to Joe Clean LLC; and $1,050.10 to Kamp Inc. (Account 8700 Statements, August 2026, at 2.)

31. On August 18, 2026, Chase posted three same-day ACH payments to account 8700: $1,814.20, reference 11232635299, to a recipient account ending in 5717; and $1,398.99 and $981.64, references 11232635636 and 11232614025, to a recipient account ending in 0322. (Account 8700 Statements, August 2026, at 2.)

32. Plaintiff made no transfer to or from Account 6930 in May, June, July, or August, 2026. In August, 2026, Chase posted nine unauthorized online real-time vendor payments to Account 6930: $3,380.50, $485.69, and $950.90 to James Corp Forest; $3,220.84 to Joe Clean LLC; and $3,164.81, $964.50, $490.77, $1,298.00, and $1,144.87 to a payee identified as Kamp Inc. The statement reports total electronic withdrawals of $15,100.88. (Account 6930 Statements, August, 2026, at 1-2.)

33. On August 18, 2026, Chase posted eleven same-day ACH payments to account 6930 in the respective amounts of $2,985.61, $2,899.50, $1,799.60, $1,750.60, $1,710.60, $1,488.67, $1,450.60, $1,422.87, $985.75, $972.64, and $950.41. The statement identifies each payment by its recipient and transaction reference. (Account 6930 Statements, August 2026, at 2.) These payments total $18,416.85.

34. Also on August 18, 2026, Chase's statements recorded four intra-bank transfers out of Account 1027 and Account 9630 into Accounts 6930 and 8700. Those transfers are itemized in the Personal-Account EFT Schedule in paragraph 40. (Account 1027 Statements, August 6 through September 3, 2026, at 2, 4; Account 8700 Statements, August 2026, at 1; Account 6930 Statements, August 2026, at 1.)

35. Plaintiff did not authorize, approve, or benefit from any of the payments and transfers described in paragraphs 30 through 34.

36. The trust-account statement records returns on August 20, 2026, of the $2,985.61, $1,488.67, and $972.64 payments, which total $5,446.92. (Account 6930 Statements, August 2026, at 1.)

37. Chase closed the office account ending in 8700 and the IOLTA account ending in 6930 on August 25, 2026. Both August statements report zero ending balances. (Account 8700 Statements, August 2026, at 1; Account 6930 Statements, August 2026, at 1.)

38. Chase issued to Plaintiff cashier's check number 5022112668, dated August 25, 2026, for the IOLTA account's remaining balance of $5,456.10, which has been deposited in an IOLTA account with Flagstar Bank. Chase's accompanying notice stated: "We closed your account(s) and attached a check for the remaining balance(s)." The trust-account statement

records a matching closure debit. (Cashier's Check Receipt at 1, attached as Exhibit "E"; Account 6930 Statements, August 2026, at 2.)

39. The office-account statement separately records a $199.14 closure debit on August 25, 2026. (Account 8700 Statements, August 2026, at 2.)

**D. The unauthorized personal-account EFTs and Plaintiff's notice to Chase.**

40. The following unauthorized electronic fund transfers ("EFTs") debited Account 1027 and Account 9630 (the "Personal-Account EFT Schedule"). (Account 1027 Statements, August 6 through September 3, 2026, at 2, 4.)

| Date | Account debited | Description | Amount | Transaction reference |
|---|---|---|---|---|
| August 18, 2026 | Personal checking 1027 | Transfer to IOLTA 6930 | $4,000.00 | 30444160301 |
| August 18, 2026 | Personal checking 1027 | Transfer to IOLTA 6930 | $100.00 | 30444264611 |
| August 18, 2026 | Personal checking 1027 | Transfer to Office 8700 | $100.00 | 30444265474 |
| August 18, 2026 | Personal savings 9630 | Transfer to Office 8700 | $3,800.00 | 30444105840 |
| Total unauthorized debits, Account 1027 (September 3, 2026 statement) | | | $4,787.93 | |
| Total unauthorized debits, Account 9630 (September 3, 2026 statement) | | | $3,861.25 | |

41. The September 3, 2026 statement for Account 1027 and Account 9630 (Exhibit "A") reflects that $4,787.93 was transferred out of Account 1027 without Plaintiff's authority, and that $3,861.25 was transferred out of Account 9630 without Plaintiff's authority. Plaintiff did not consent to, approve, or benefit from any of these transfers and was unaware of any of these transfers.

42. Plaintiff notified Chase of the personal-account errors as follows:

(a) Between June 28, 2026 and August, 2026, Plaintiff contacted Chase by telephone more than 100 times, reporting theft from his accounts, demanding

restitution, and complaining that Chase was not exercising reasonable care over his accounts (Exhibit "D");

(b) On August 14, 2026, after Chase's own personal banker called Plaintiff to report suspicious activity, Plaintiff reported the disputed personal-account transfers to Chase and asked Chase to prevent pending charges from becoming final (paragraph 29);

(c) After the August 18, 2026 transfers posted, Plaintiff continued to report them to Chase as unauthorized on Accounts 1027 and 9630, from Ex. D; and

(d) After receiving the September 3, 2026 statement, Plaintiff reported the $4,787.93 and $3,861.25 in unauthorized debits to Chase.

43. Chase has not restored the $4,787.93 taken from Account 1027 or the $3,861.25 taken from Account 9630, and has not explained its handling of Plaintiff's personal-account disputes. Chase never provisionally recredited Account 1027 or Account 9630 at any time, and Chase never sent any written notice of the results of an investigation.

**E. Chase's claim form, claim schedules, and assurances.**

44. Chase directed Plaintiff to resolve his losses through Chase's internal claim process. At the branch, Chase handed Plaintiff the claim form attached as Exhibit "G," which is written in complicated language and, among other things, states that the claim must be filed within four days of receipt or it will be closed.

45. Chase then presented Plaintiff with four different schedules of transactions, attached as Exhibit "H," which Chase presented as the only valid claims. Each schedule was preceded by a copy of Exhibit "G." Chase presented the amounts on those schedules to Plaintiff as the only amounts subject to claim which vary considerably with the actual losses.

46. After all of the losses took place, Plaintiff's personal banker sent him a basket of cheeses, crackers, smoked salmon, and other food, tied with a blue ribbon bearing the word "CHASE," and a card that said, "We are sorry that we fell short of the exceptional service you deserve. We value your business. Jung Yoon Jee."

**F. Plaintiff's unreimbursed losses, without duplication.**

47. As a result of the unauthorized transactions and Chase's handling of them, Plaintiff lost access to funds and incurred unreimbursed account losses. He seeks restoration of those funds and the damages available under the applicable statutes and common law.

48. Account 8700, June 2026. Chase never credited the four ticket charges described in paragraph 19, totaling $4,433.28, or the $5,000.00 Zelle payment described in paragraph 25. The unreimbursed June loss in Account 8700 is $9,433.28. (Account 8700 Statements, June 2026, at 1-6.)

49. Account 8700, July 2026. Chase re-debited $13,001.32 in previously credited amounts without explanation (paragraph 24) and paid the unauthorized payroll payments of July 7 and 8, 2026, totaling $6,705.50 (paragraph 26), for July losses of $19,706.82. After the $4,875.00 in credits posted on July 28 and 29, 2026 (paragraph 27), the net July loss is $14,831.82. (Account 8700 Statements, July 2026, at 1-5.)

50. Account 8700, August 2026. For the period ending August 31, 2026, Account 8700 suffered a net loss of $7,070.35. (Account 8700 Statements, August 2026, at 1-2.)

51. Account 8700, total. The total loss in Account 8700 for June, July, and August 2026 was $31,335.45. On the afternoon of September 29, 2026, Chase sent Plaintiff a check for $3,631.08 (Exhibit "F"), which equals the uncredited June 22 ticket charge, with no explanation

beyond its relation to part of the missing Account 8700 funds. After deducting that check, the net unreimbursed loss in Account 8700 is $27,704.37.

52. Account 6930. The Account 6930 statement reported a beginning balance of $29,426.91 on August 1, 2026, and a $0 balance on August 31, 2026. The unauthorized payments described in paragraphs 32 and 33 removed $33,517.73 ($15,100.88 in vendor payments and $18,416.85 in ACH payments), of which $5,446.92 was returned on August 20, 2026 (paragraph 36), for net unauthorized outflows of $28,070.81. Those outflows consumed the $29,426.91 beginning balance and the $4,100.00 transferred in from Account 1027 on August 18, 2026, leaving the $5,456.10 remaining balance that Chase returned by cashier's check (paragraph 38). Measured from the beginning balance, the net loss in Account 6930 is $23,970.81 ($29,426.91 less $5,456.10). (Account 6930 Statements, August 2026, at 1-2.) Plaintiff never authorized these transfers and never benefited from them.

53. Accounts 1027 and 9630. The September 3, 2026 statement reflects unauthorized debits of $4,787.93 from Account 1027 and $3,861.25 from Account 9630 (paragraph 41). The August 18, 2026 intra-bank transfers moved $4,200.00 out of Account 1027 ($4,100.00 to Account 6930 and $100.00 to Account 8700) and $3,800.00 out of Account 9630 to Account 8700 (paragraph 40).

54. Plaintiff does not seek to recover the same loss twice because funds moved from a personal account to a commercial account before a further payment, or because a loss supports more than one cause of action. Specifically:

(a) Plaintiff claims the August 18, 2026 intra-bank transfers only as personal-account losses under the First Cause of Action;

(b) the $23,970.81 claimed for Account 6930 is measured from that account's

August 1, 2026 beginning balance and therefore excludes the $4,100.00 transferred into it from Account 1027;

(c) to the extent the Account 8700 loss includes any part of the $3,900.00 transferred into it from Accounts 1027 and 9630, Plaintiff will reduce the Account 8700 claim by any amount he recovers for those transfers under the First Cause of Action; and

(d) the Third, Fourth, and Fifth Causes of Action seek no amount recovered under the First or Second Cause of Action.

55. Plaintiff's net unreimbursed account losses are as follows:

| Account | Account type | Claims | Net unreimbursed loss |
|---|---|---|---|
| 1027 | Personal checking | First (EFTA); Third and Fourth in the alternative | $4,787.93 |
| 9630 | Personal savings | First (EFTA); Third and Fourth in the alternative | $3,861.25 |
| 8700 | Law-office operating | Second (U.C.C. Article 4-A); Third and Fourth in the alternative | $27,704.42 |
| 6930 | IOLTA attorney trust | Second (U.C.C. Article 4-A); Third and Fourth in the alternative | $23,970.81 |
| **Total** | | | **$60,324.41** |

56. Plaintiff seeks restoration of trust-account funds in his capacity as the account holder and attorney responsible for that account. Chase's statements identify Plaintiff, doing business as the Law Office of Michael G. Dowd, as the holder of Account 6930 (paragraph 12). Chase deposited the remaining $5,456.10 balance into a successor IOLTA account at Flagstar Bank (paragraph 38). Any recovery on Account 6930 will be deposited into the successor Flagstar IOLTA account.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violations of the Electronic Fund Transfer Act and Regulation E**
**(Against J. P. Morgan Chase Bank, N.A.)**

57. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 56 above as though fully set forth herein. This cause of action concerns only Account 1027 and Account 9630, and the personal-account EFTs itemized in paragraphs 40 and 41.

58. Plaintiff is an individual consumer. Account 1027 is a demand-deposit asset account, and account 9630 is a savings-deposit asset account. Each was established primarily for personal, family, or household purposes and held at Chase, a financial institution. Each therefore qualifies as an account under 15 U.S.C. § 1693a(2) and 12 C.F.R. § 1005.2(b).

59. The challenged personal-account transactions were electronic fund transfers initiated through an electronic terminal, telephone, computer, or magnetic tape to instruct Chase to debit a consumer account, rather than transactions originated by check or similar paper instrument, within 15 U.S.C. § 1693a(7). Plaintiff alleges that they were initiated by someone other than Plaintiff without his actual authority and without benefit to him, within 15 U.S.C. § 1693a(12) and 12 C.F.R. § 1005.2(m).

60. Under 15 U.S.C. § 1693g and 12 C.F.R. § 1005.6, Plaintiff's liability for unauthorized EFTs is limited by the applicable statutory and regulatory conditions. Chase bears the burden of establishing authorization or the conditions permitting it to impose liability on Plaintiff.

61. Chase violated those limits by leaving Plaintiff responsible for the full $4,787.93 debited from Account 1027 and the full $3,861.25 debited from Account 9630, in excess of any liability permitted by 15 U.S.C. § 1693g and 12 C.F.R. § 1005.6.

62. Plaintiff gave Chase notice of the personal-account errors on the dates and in the manner alleged in paragraph 42. Chase also had independent knowledge of the unauthorized activity: its own personal banker called Plaintiff on August 14, 2026, to report suspicious activity and attempted thefts from his accounts (paragraph 29).

63. Upon qualifying notice, Chase was required under 15 U.S.C. § 1693f and 12 C.F.R. § 1005.11 to investigate the reported errors, provide provisional credit when required, determine and communicate the results within the applicable periods, and correct errors for which Plaintiff was not liable. Section 1693f required Chase to investigate within ten business days of receiving notice, or to provisionally recredit the accounts within that period while it completed its investigation.

64. More than ten business days passed after Plaintiff's notice. Chase violated 15 U.S.C. § 1693f and 12 C.F.R. § 1005.11 by:

(a) failing to investigate the reported errors in Accounts 1027 and 9630 and determine whether an error occurred within the required period;

(b) failing to provisionally recredit Accounts 1027 and 9630 for the disputed amounts while any investigation continued;

(c) failing to report the results of any investigation to Plaintiff or explain any determination; and

(d) failing to correct the errors, for which Plaintiff was not liable.

65. Chase did not provisionally recredit Accounts 1027 or 9630 (paragraph 43). Records available to Chase would have shown that the August 18, 2026 transfers were errors, including its personal banker's August 14, 2026 identification of suspicious activity, Plaintiff's months of reports, and account histories showing that Plaintiff made no transfer to or from

Account 6930 in May through August 2026. Plaintiff seeks treble damages under 15 U.S.C. § 1693f(e) upon proof of the statutory conditions.

66. Chase's violations caused Plaintiff actual damages, including the $4,787.93 and $3,861.25 in unreimbursed personal-account losses and the loss of use of those funds. Plaintiff seeks actual and statutory damages under 15 U.S.C. § 1693m, and costs and reasonable attorneys' fees to the extent recoverable under 15 U.S.C. § 1693m(a).

**SECOND CAUSE OF ACTION**
**Unauthorized Funds Transfers Under New York U.C.C. Article 4-A**
**(Against J. P. Morgan Chase Bank, N.A.)**

67. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 66 above as though fully set forth herein.

68. This cause of action concerns payment orders charged to Account 8700 and Account 6930: the $5,000.00 Zelle payment (paragraph 25), the $3,550.25 and $3,155.25 payroll payments (paragraph 26), and the August 2026 real-time vendor and same-day ACH payments (paragraphs 30 through 33). It does not include the August 18, 2026 intra-bank transfers out of Accounts 1027 and 9630, which are governed by the EFTA and pleaded in the First Cause of Action. Article 4-A does not apply to a funds transfer any part of which is governed by the EFTA. N.Y. U.C.C. § 4-A-108.

69. The challenged payment orders were not authorized by Plaintiff and were neither authorized nor effective as his orders under N.Y. U.C.C. § 4-A-202. Chase accepted and executed the orders and charged the corresponding accounts.

70. Chase did not verify the challenged orders in a manner sufficient to make them effective against Plaintiff under N.Y. U.C.C. § 4-A-202. An assertion that account credentials were used does not establish all statutory conditions for shifting the loss. Plaintiff disputes that Chase accepted the orders in good faith and in compliance with an agreed, commercially

reasonable security procedure. Chase has failed to identify any security procedures in response to repeated demands by Plaintiff, any relevant written restrictions, or the factual basis for alleged noncompliance or commercial unreasonableness; it has not supplied the governing security-procedure agreements.

71. Plaintiff also seeks relief under this count for the disputed ticket transactions to the extent they constitute payment orders governed by Article 4-A.

72. Plaintiff demanded restoration of the unauthorized ticket charges, Zelle payment, and July payroll payments (paragraphs 18, 25, and 26), and on August 14, 2026 asked Chase to stop the pending August charges from becoming final (paragraph 29).

73. Under N.Y. U.C.C. § 4-A-204, Plaintiff is entitled to a refund of amounts paid for unauthorized and ineffective payment orders, together with interest to the extent provided by law. Plaintiff seeks the net unreimbursed amounts proven at trial, accounting for returned payments and effective credits and without duplicating recovery under the EFTA or another count.

**<u>THIRD CAUSE OF ACTION</u>**
**Negligence (Pleaded in the Alternative)**
**(Against J. P. Morgan Chase Bank, N.A.)**

74. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 73 above as though fully set forth herein.

75. This cause of action is pleaded in the alternative, and only to the extent it is not displaced by U.C.C. Article 4-A and not duplicative of the Fourth Cause of Action. The statutory counts remain Plaintiff's primary grounds for recovery.

76. Chase owed Plaintiff duties of ordinary care that exist independently of the express deposit-account promises: (a) a duty arising from Chase's undertaking to provide Plaintiff with personal-banker oversight of his accounts; and (b) a duty to exercise ordinary care

to safeguard Plaintiff's deposits against unauthorized withdrawals. Plaintiff does not rely solely on the existence of the deposit relationship to establish an independent tort duty.

77. Chase undertook account oversight. It contacted Plaintiff over the years about questionable transactions and assured him that his platinum checking relationship included a personal banker, Ms. Jung Yoon Jee (paragraph 14). Chase's prior contacts concerning questionable transactions and its assurances of a platinum relationship with a personal banker led Plaintiff to expect account oversight. Chase performed that undertaking in part: its personal banker identified suspicious activity and called Plaintiff on August 14, 2026 (paragraph 29).

78. Chase breached those duties by failing to exercise ordinary care in performing its undertaking and in handling the unauthorized activity after Plaintiff's repeated reports, including by:

(a) paying approximately 69 ticket-purchase charges over eight days from an account that had never been used to buy more than one ticket at a time (paragraph 17);

(b) paying two "payroll" payments from an account that had carried no payroll since 2016 (paragraph 26);

(c) allowing the August 17 and 18, 2026 payments and transfers to post after its own personal banker flagged suspicious activity and Plaintiff asked Chase to stop the pending charges (paragraphs 29 through 34);

(d) reversing $13,001.32 in disputed credits without explanation (paragraph 24); and

(e) failing to give a coherent response to Plaintiff's repeated reports (paragraphs 20 through 22).

79. Those failures proximately caused Plaintiff's loss of funds and use of funds.

80. Plaintiff seeks compensatory damages under this count, in an amount to be proven at trial, to the extent the claim is not displaced by the U.C.C. or duplicative of the Fourth Cause of Action. The statutory counts remain the primary grounds for recovery on transfers and items governed by their provisions.

**FOURTH CAUSE OF ACTION**
**Implied Covenant of Good Faith and Fair Dealing**
**(Against J. P. Morgan Chase Bank, N.A.)**

81. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 79 above as though fully set forth herein.

82. Plaintiff and Chase were parties to deposit-account agreements governing Accounts 1027, 9630, 8700, and 6930. The relationship between Plaintiff and Chase includes an implied covenant of good faith and fair dealing, under which Chase agreed not to act to deprive Plaintiff of the benefits of the agreement.

83. Under those agreements, Chase undertook, among other things, to hold Plaintiff's deposited funds, to pay from each account only transactions that Plaintiff authorized, and to investigate and resolve Plaintiff's reports of unauthorized transactions. Plaintiff performed his obligations. He maintained his accounts with Chase for more than 30 years, reported the unauthorized activity promptly and repeatedly (paragraphs 18, 20, 29, and 42), and complied with every Chase security request, changing his user ID and password at least six times, having an information-technology expert examine and clean his computer, and using an IBM protection program (paragraph 23).

84. Chase breached the agreements by:

(a) paying and charging to Plaintiff's accounts transactions he did not authorize (paragraphs 17, 25, 26, 30 through 34, 40, and 41);

(b) reversing on July 20, 2026, without explanation, $13,001.32 in credits it had posted to Account 8700 on June 29, 2026 (paragraph 24); and

(c) failing to investigate, resolve, or explain its handling of Plaintiff's reported errors (paragraphs 19 through 22, 24, 25, and 43).

85. In the alternative, to the extent the agreements give Chase discretion over provisional credits, dispute investigations, and claims, Chase breached the implied covenant of good faith and fair dealing by exercising that discretion to deprive Plaintiff of the benefit of his agreements: it reversed credits without stating any reason, refused to identify its representatives or explain its actions, confined Plaintiff's claims to schedules it drafted (paragraph 45), and refused to supply the security-procedure agreements it claims govern the accounts (paragraph 70).

86. As a direct and proximate result of Chase's breaches, Plaintiff lost the funds identified in paragraphs 47 through 55 and the use of those funds. Plaintiff seeks compensatory damages in an amount to be proven at trial, to the extent this claim is not displaced by U.C.C. Article 4-A and without duplicating recovery under any other count.

**<u>FIFTH CAUSE OF ACTION</u>**
**Deceptive Acts and Practices Under N.Y. Gen. Bus. Law § 349**
**(Against J. P. Morgan Chase Bank, N.A.)**

87. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 86 above as though fully set forth herein.

88. <u>Consumer-oriented conduct.</u> Chase's conduct is directed at depositors generally, not at Plaintiff alone. Chase handed Plaintiff a standardized claim form (Exhibit "G"), presented four copies of it to him with its claim schedules (Exhibit "H"), and handled his reports through call-center representatives who, on information and belief, follow scripts and practices that Chase applies to all depositors reporting fraudulent transactions. On information and belief, these

practices fall most heavily on senior citizens, who are frequent targets of account fraud and who are least able to withstand repeated calls, branch visits, and delay.

89. Materially misleading conduct: the four-day claim form. Exhibit "G" states that a claim must be filed within four days of receipt or it will be closed (paragraph 44). That statement is materially misleading. It conveys to a reasonable consumer that his claim, and his right to recover, will be lost unless he completes Chase's form within four days. Federal law, by contrast, gives a consumer sixty days after receiving the first statement disclosing an unauthorized electronic fund transfer to report it to his bank. *See* 15 U.S.C. §§ 1693f, 1693g; 12 C.F.R. §§ 1005.6, 1005.11.

90. Chase compounded the misleading message by presenting its four schedules, each preceded by a copy of Exhibit "G," as the only valid claims and the only amounts subject to claim (paragraph 45). Those presentations conveyed that Chase's internal process, and the amounts Chase chose to list, defined the limit of Plaintiff's rights.

91. Materially misleading conduct: the security assurances. Beginning on June 28, 2026, Chase repeatedly assured Plaintiff that changing his ID and password would keep his funds safe and that Chase was exercising care in protecting his accounts (paragraph 21). Those assurances were materially misleading. Plaintiff changed his credentials at least six times and followed every other Chase instruction (paragraph 23), yet unauthorized payments continued in July (paragraph 26) and, in August, drained both commercial accounts and moved funds out of both personal accounts (paragraphs 30 through 34). A reasonable depositor would rely on a bank's assurance that its prescribed steps would keep his funds safe.

92. On information and belief, Chase reinforces these misleading messages through standardized practices, including: refusing to provide any identifying information beyond a first

name; routing depositors at random to call centers whose employees know nothing about the depositor's loss and tell the depositor that questions about thefts are handled by a back office or a fraud or claims department; giving depositors a telephone number to call rather than transferring the call; responding to a depositor's question whether state or federal law governs the bank's responsibilities with the statement, "You must file a claim; we will help you do that"; and closing or freezing depositors' accounts, so that depositors cannot inspect their accounts or print statements online. Depositors are told they must come to their branch to see their monthly account statements, where they are handed the claim form. On information and belief, these practices are designed to delay elderly depositors until they abandon their claims.

93. Plaintiff is 84 years old and was subjected to each of the practices alleged in paragraphs 89 through 92, including the call-center routing and first-name-only responses alleged in paragraphs 20 and 22.

94. Injury and causation. Chase's misleading conduct injured Plaintiff. Because of the four-day form and the schedules, Plaintiff was channeled into Chase's internal claim process, Chase treated his claims as limited to the amounts it listed, and Plaintiff has not recovered amounts omitted from those schedules: Because of the security assurances, Plaintiff followed Chase's instructions and left his funds in the accounts, believing they were safe, and the August 17 and 18, 2026 transfers then took them. Had Chase told Plaintiff the truth, he would have. Plaintiff also lost time and incurred expenses in complying with Chase's instructions. Plaintiff seeks actual damages, together with such additional damages and reasonable attorney's fees as N.Y. Gen. Bus. Law § 349 permits, without duplicating recovery under any other count.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant J. P. Morgan Chase Bank, N.A. as follows:

1. Actual damages under 15 U.S.C. § 1693m in an amount to be determined at trial;

2. Statutory damages under 15 U.S.C. § 1693m;

3. Treble damages under 15 U.S.C. § 1693f(e) upon proof of the statutory conditions;

4. Refunds of unauthorized and ineffective payment orders under N.Y. U.C.C. § 4-A-204, together with applicable interest;

5. Compensatory damages on the negligence and breach-of-contract claims, to the extent recoverable, without duplicating recovery under another count;

6. Actual damages, additional damages, and reasonable attorney's fees under N.Y. Gen. Bus. Law § 349;

7. Pre-judgment and post-judgment interest as allowed by law;

8. Costs of suit incurred herein;

9. Reasonable attorneys' fees to the extent recoverable under 15 U.S.C. § 1693m(a); and

10. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: Bayside, New York
October 6, 2026

Respectfully submitted,

*Michael G. Dowd*

MICHAEL G. DOWD
217-59 Corbett Road
Bayside, New York 11361
(917) 842-9673 | michaelgdowd@gmail.com
*Plaintiff, Pro Se*